Chief Justice Robertson
delivered the Opinion of the Court:
Callis having obtained a decree against the unknown heirs of Jeffreys, upon a certificate of publication by Joel R. Lyle—Editor ol the Paris Citizen, the Court which rendered the decree permitted Lyle, more than three years succeeding thé daté of it, to amend the certificate by substituting Printer for Editor.
And this writ of error is brought by thé heirs, for thé purpose of setting aside that amendment.
It is now the settled doctrine of this Court, that a ceriificate by an Editor, oí the publication of an Order for the appearance of absent or unknown defendants, is not the kind of proof of constructive service prescribed in i i , , , , . , _ . *. _ such cases by statute, and that the “Printer” (or Propri *466 dor) alone has authority to certify orders of publications And, however questionable or much questioned • such a-literal interpretation of the statute may have been, it is, in our judgment, now too firmly established- to be changed by any other than legislative authority.
An act of assembly authorized' the Editor of a paper to publish orders of court, dnd declared that in making piibli— cations he should' be governed by the general lhvvs: held; thill Chfci act does not confer upon him authority to certify publications.
Where there is ¿ny evidence in ¿cause, showing that an order against absent or ¿nknown def’ts was in fact duly published (e. g. the certificate of án editor) the de creo founded on ünch constructive service, will not be deemed void for want of jurisdiction: Ibo’ if the evidence of publication be not such as the law requires (viz the printers’ c'er¿ fjficaíe) ihe decree will be erroneous.
*466 It is, as.- has bee» urged in this case, a fact that an act of assembly of 1807 authorized the Editor of the Paris Citizen “to insert in that paper orders of publication1,* and also declared that he should, in maleing ymbliaatiom? be regulated by the general law. But, as that special enactment did not provide, that the Editor should certify the publication of orders, it is, in that particular, at least, not inconsistent with "the general statute which prescribed the certificate of the printer as- the proper ev* idence of publication. And therefore, as Editor and Prinf ter (or proprietor), may be different persons, the fact that the Editor of the Paris Citizen was authorized to publish orders does n’ot profe—--whatever else' it might tend to-show—that a certificate by him should be evidence of publication. Consequently the certificate by Joel R. Lyle Editor must, according to the established doctrine’ of this Court, be deemed insufficient evidence.
And the'refórte-, if the amendment afterwards made ean be deemed prejudicial t<Y the'plaintiffs in* e'rroiyaffd; was also unauthorized, the order for amending the cer-2 tifieate of publ'ic’ation should be' set aside by this Court.
The decree on such a certificate by an Editor, was not void; because, the fact of a sufficient publication appearing in the record, the error of the Circuit Court, in admitting the fact, or in permitting illegal or insufficient evidence' of it, could only entitle the heirs- to- a reversal of the1 decree, which, as long as it stands, should- -be deemed valid—though erroneous. Had the statute prescribed the certificate as the only legal evidence of publication, and had a file of the Paris Citizen' been exhibited, instead of the certificate, although this CoUrf might re-* verse the decree because the Circuit Judge had erf'ed in* admitting any other evidence than1 that prescribed by the statute—surely, as we think, we could not pronounce the decree void. Nor, for the like reason, could a decree be deeme'd void,- in judgment of law, merely be *467 ¡cause the Court may have permitted oral testimony, upon oath or otherwise, by the Editor, Printer, or any other credible person, as proof of publication. And if the error of admitting an affidavit in court, or the testimony of a stranger, or of the Editor, under the sanction of an oath, would not have rendered the decree void, it seems clear to us, that the error of admitting, as proof, the certificate or mere statement of the Editor, could not render it void. In each case, the error v/ould be thé same—(viz:) the improper admission of incompetent evidence. But, as in each, the record, if true, would show the fact of sufficient publication, the decree could not bé deemed void, in either, for want of jurisdiction; but might be reversed because improper evidence had been admitted, and because, therefore, there may not have been, in fact, a sufficient publication notwithstanding all that the record exhibits.
Amendments are allowed in court* of equity, as in courts of law.
By several English statutes of amendment, in force here, various misprisions of officers & min isterial agents of courts may ba corrected ;among other things,they authorize the correction, after judg’t, of the omission of th® name, or mistake of the true title or character, of any ministerial officer, in reporting any fact, which it was his duty to certify, or which he was authorized to perform.
But, nevertheless, although it would seem, prima facie, that a writ of error for reversing the decree, as originally rendered, might be now barred; yet, as this Court cannot know that there may not have been saving disabilities, or that, if there were not, the statute of limitations would be pleaded to such a writ—therefore, we ¡cannot say that the amendment of the certificate, if erroneous, may not be prejudicial. And therefore, we must decide whether the amendment was proper.
We take it for granted that the the doctrine of amendment, whether statutory or merely rational, should prevail as far as, iu its spirit and nature, it may be applicable, in a court of equity, as well as in courts of law.
A statute of 8 Henry 6th c. IS enacted, among other court in which the judgment had been rendered, or by things, in substance, that courts might correct and amend misprisions, in letters or syllables, by any officer or other minister whatsoever of court. And it was also provided by a statute of 16 & 17 Chas. Qcl ch. 8, among many other things, that an omission of the sheriff’s name in a return on an original writ, might be amended, after judgment on a verdict, and in affirmance thereof, by the *468 that to which the record might happen to be taken by a writ of error; and a statute of the 4 Anne ch. 16 extended the power to judgments by default.
There is no prescribed limitation of the time within which ministerial misprisions, amendable after judgment or decree, may be amended: it may be done at any time while the record remains before the court.
Printers of authorized newspapere, though not properly officers, are agents, of courts, for executing and certifying constructive service of process upon ab - sent def’ts and unknown heirs; and quere whetli er they are not amenable to the courts for misconduct or abuse of privilege in. relation' to such' publications.
*468 These statutes and other British enactments of a kindred character, in force in 1753, were, in that year, reenacted by the colonial legislature of Virginia; and are, of course, in force in this State, except so far as they may have' beeen expressly or constructively repealed. And, considered in pari materia, as they ever have been and should be, they authorize a correction, after judgment, of a misprision, even in the omission of his name, or in a mistake of his true title or character, by any officer or ministerial agent oí the court, in reporting any fact which it was his legal duty to certify, or which either the court or the law had specially delegated to him the power of certifying, in respect to any act which he had been authorized to perform for the court.
A statue of 9 Henry 5th ch. 4 authorized certain amendments in process after, as well as before, judgment, “as long as the record, and process” remained before the court. And a similar effect has been constructively given to all the general and unqualified statutes of amendment subsequently enacted; and hence there is no prescribed or specific limitation as to the time of amending ministerial misprisions which may be amendable after judgment or decree.
If a printer’s certificate of publication should be deemed, in any essential respect, like a sheriff’s return, then, whether it be conclusive or inconclusive of the fact of constructive service, we are clearly of the opinion that, according to the true import and spirit of the practical doctrine of amendment, the correction now complained of, was authorized by law. But, if the certificate can bo considered as only a species of anomalous evidence of a fact to be litigated, we should not doubt that the Circuit Court had not, after the expiration of the term when the final decree was rendered, any more power to make an alteration of it than of any other evidence in the, cause.
Upon a proper consideration of the objects and provisions of the statutes prescribing the mode of proceed-. *469 ing by bill in chancery against absentees and unknown heirs, it seems to us that, though printers, who are authorized to publish and certify orders of publication against such persons, are not, slricti juris, officers of court, they are by law, made the agents of courts for the purpose of executing and certifying constructive service of process for bringing the absent or unknown persons into court, as parties to suits instituted against them. And we should incline to the opinion, that such printers, like all other ministerial agents whose duties are defined and regulated by law, would be amenable to the courts whose orders they may have published, for contumacy, or for other miscqnduct in refusing to certify or in certifying falsely. But whether, in any respect, or under any circumstances, they may be thus responsible for infidelity or for refusal to certify, the question we are now considering does not require us to determine. They are, at least when they act, agents of court and of the law for all the purpose of publishing and of certifying constructive judicial notice; and we are not able to perceive any satisfactory reason why their certificates, operating as quasi official returns on a peculiar kind of process, may not be amendable whenever, under similar circumstances, an official return on a formal writ or subpoena might, without doubt, be amended. Should a certificate of publication be not as conclusive as a sheriff’s return, that cannot, as we think, be a sufficient reason why it may not be amended whenever the latter would be amendable: because, first—the conclusiveness of a sheriff’s return should operate rather against any amendment of it after the parties are out of court; and, second—if the application for amending be, in fact, ex parte, security against imposition and error would be as great, or nearly so, in the one case as in the other; and upon a motion to amend a certificate of publication, there could be no more necessity for notifying the absent or unknown party to appear, for the purpose of resisting the right to amend, or of controverting the truth of the proposed-amendment, than there would be on a motion for amending a sheriff’s return on an original writ or a subpoena ip chancery,
Their certificates of publication may be amended, whenever, and to the same extent," that the return of a sheriff upon process, might he amended.
As the service of process — actual or constructive, ia necessarily ex ¡parte ,an amendment to the return may be made ex parte. An appearance to controvert the truth of the return, would be an appearance to the suit.
A printer’s certificate^is^ofits-^ his authority to certify, as well «ertified.
Service of process, actual or constructive, being but an initiatory step for bringing a person into court for the purpose of litigation, proof of service is necessarily ex parte; and if, after it is filed, and has been admitted as sufficient, it may be controverted, an appearance for that purpose will, ipso facto, make the person so appearing a party to the suit, and thus effect the object of a judicial citation; and, as proof of legal service is necessarily ex parte in the first instance, an amendment showing that the person certifying the service was the proper person,may be equally so;-and therefore, a certificate of publication should not be deemed such evidence of a fact to be litigated as to except it, on that ground, from the operation of the law for amending returns on judicial pro-* cess.
The law presumes that those to whom it confides the trust of certifying orders of publication, will report the' truth, and that, if they do not, or if any person without authority should fabricate a spurious certificate, the im-posture will not escape detection, lhe certificate is5per se, accredited, not only for the fact certified, but also for the fact that the certifier is what he styles himself as being—the proper and only proper person to certify the publication of the order. If Lyle had, in the first instance, styled himself printer, his certificate would have been authoritative and unquestioned, merely because it purported to be the authorized and proper act of the proper person. Then if, through ignorance or mistake, he* omitted the affixation of the true and authoritative adjunct-to his name, when afterwards, in the presence and under the scrutiny of the Court, he amended the signature and; added his proper title, why should not the certificate be' entitled to as much credence and effect as any other certificate purporting to be the act of an authorized printer, and drawn up without the presence or observation of theGpurt? There is, indeed, no incongruity between his first and his amended title. “Editor” and “Printer” may be, and generally are, the same person; and in common parlance, those titles are used as synonymes characterizing'the same man, whether he be both the “Editor” and “Proprietor,” or the latter only. Editor has been- *471 deemed insufficient merely because an editor is not iiebessarily the printer or proprietor.
A decree was ren dered upon an editor's certificate o’f publication; three years afterwards, he was permitted; upon motion in court, to amend the certificate,by inserting sprinter” in the place of “editor”—as. the description o’f the persbfi certifying: held, that the amendment was properly allowed.
Wherefore, an order of publication being, as we consider it, a quasi process, and the Certificate of publication a quasi return thereon, and the certifying printer being, as we think, the agent appointed by law for executing and making return on such constructive procéss —we do not feel authorized to resist the conclusion, that the certificate in this case, like a-sheriff’s returnon 'á "Writ or subpcena, was amendable, and was properly amended by the substitution of “Printer” for “Editor,”
It neither appears, nor should be presumed, that the plaintiffs in error were illegally Or unjustly prejudiced by the amendment; and we are bound to presume, that the certificate, as amended, is only what it was intended to be, and ought to have been, in the first instance; and, of course, that Lyle was the printer as well as editor, and made a regilláf aild sufficient publication, as required and as certified.
Whether, on a writ of error to reverse the decree, thiá Court might have made the amendment, is a question not involved in this case; and therefore, we intimate no opinion respecting it.
The order amending the certificate must be affirmed*